**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 96-4023

ONE MALE JUVENILE,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Bryson City.
Lacy H. Thornburg, District Judge.
(CR-95-95)

Argued: May 5, 1997

Decided: July 11, 1997

Before MURNAGHAN and HAMILTON, Circuit Judges, and
LEGG, United States District Judge for the
District of Maryland, sitting by designation.

_____

Dismissed by unpublished per curiam opinion. Judge Murnaghan
wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Milton Gordon Widenhouse, Jr., Assistant Federal Public
Defender, Raleigh, North Carolina, for Appellant. Thomas Richard
Ascik, Assistant United States Attorney, Asheville, North Carolina,
for Appellee. **ON BRIEF:** Mark T. Calloway, United States Attor-
ney, Asheville, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Appellant, One Male Juvenile, appeals a twelve-month sentence imposed by the district court following his guilty plea to two counts of stealing property of an Indian tribal organization in violation of 18 U.S.C. §§ 1163 and 5031. Because appellant waived his right to appeal his sentence in his plea agreement, we dismiss the appeal.

I.

On November 28, 1994, appellant and another juvenile climbed a fence at the waste water treatment plant on the Cherokee Indian Reservation in Swain County, North Carolina, entered an unlocked tool shed, and stole a weedeater and a tool box owned by the Eastern Band of the Cherokee Indians. A few days later, on December 2, 1994, appellant broke into Birdtown Head Start, a day care facility also located on the reservation, and took a number of items, including a cordless telephone, a camcorder, a camera, and a video cassette recorder. Later that day, a law enforcement officer, investigating several larcenies on the reservation, went to appellant's residence, where the investigator found pictures of appellant and two of the cameras stolen from the day care center.

Appellant subsequently confessed to breaking and entering and stealing property at the waste water treatment plant and the day care center. In addition, appellant gave the police information about other recent thefts.

On November 20, 1995, appellant entered into a plea agreement with the government in which he pled guilty to two counts of stealing property valued in excess of $100 from an Indian tribal organization in violation of 18 U.S.C. § 1163. In the plea agreement, appellant expressly waived his right to appeal his conviction and his sentence,

2

either on direct appeal or in a post-conviction proceeding, except on the grounds of ineffective assistance of counsel or prosecutorial misconduct. During the Rule 11 colloquy, see FED. R. CRIM. P. 11(c), the district court expressly asked appellant whether he understood that by pleading guilty he was waiving his right to appeal his conviction and to contest his sentence, unless he was doing so on the grounds of ineffective assistance of counsel or prosecutorial misconduct. Appellant responded that he understood the waiver and that he knowingly and willingly waived his right to appeal. The district court thereafter accepted appellant's plea.

Prior to the sentencing hearing, the government requested an enhancement of appellant's sentence because appellant's offenses involved "more than minimal planning." See U.S. SENTENCING GUIDELINES MANUAL § 2B1.1(b)(4)(A) (1995). In addition, the government moved the district court for an upward departure of two levels, from criminal history category I to criminal history category III. See id. § 4A1.3 (permitting increase in criminal history category where criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood of future criminal conduct). These enhancements were recommended in appellant's presentence report, and appellant objected to them.

On December 18, 1995, the district court conducted a sentencing hearing. The district court noted that appellant's criminal history category of I did not take into account two previous tribal court convictions, see id. § 4A1.2(I) (sentences from tribal court convictions are not counted when computing a defendant's criminal history but may be considered when deciding whether to depart upwardly under § 4A1.3), and concluded that a criminal history category of I did not adequately reflect appellant's prior criminal history. The district court, therefore, agreed to depart two levels to a criminal history category of III. In addition, the district court granted the government's requested enhancement of two points for more than minimal planning. Based on these enhancements, the district court sentenced appellant to twelve months in prison, imposed a special assessment of $100, and ordered restitution in the amount of $763.86, appellant's proportionate share of the value of the economic loss sustained by the victims.

3

After announcing the sentence, the district court told appellant that "[he] ha[d] an absolute right to appeal [his] sentence." (J.A. 108). When asked whether he understood that right, appellant responded, "yes." (J.A. 108). The government did not object to the district court's statement. Appellant now appeals his sentence.

II.

Whether a defendant waived his right to appeal is a matter of law, which we review de novo. See United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992).

A waiver of a criminal defendant's right to appeal contained in a valid plea agreement "is enforceable against the defendant so long as it is `the result of a knowing and intelligent decision to forgo the right to appeal.'" United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994) (quoting United States v. Wessells, 936 F.2d 165, 167 (4th Cir. 1991)), cert. denied, 115 S. Ct. 1957 (1995). In determining whether a defendant's waiver is "knowing and intelligent," we consider "the particular facts and circumstances surrounding [the] case, including the background, experience and conduct of the accused." United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992) (citation and internal quotes omitted). Although a general waiver of the right to appeal is valid, such a waiver does not preclude a defendant from arguing on appeal that his sentence was imposed in excess of the maximum penalty provided by statute or was based, for example, on a constitutionally impermissible factor, such as race. See Marin, 961 F.2d at 496. A general waiver does preclude, however, an argument that the district court improperly applied the sentencing guidelines or violated a procedural rule when imposing sentence. See Attar, 38 F.3d at 732.

Considering the particular facts and circumstances of this case, we believe that appellant's waiver of his right to appeal his sentence as contained in the plea agreement was knowing and intelligent. During the Rule 11 colloquy, the district court specifically questioned appellant about his decision to waive his right to appeal. In response, appellant stated that he understood the consequences of the waiver, and he reaffirmed his decision. Although appellant was a juvenile at the time he was sentenced, he was represented by counsel, and there is no evidence that he was incapable of understanding the consequences of his

4

decision. In light of appellant's affirmance before the district court that he knowingly and willingly waived his right to appeal and the absence of any evidence suggesting his waiver was not knowing and intelligent, the waiver was effective.

Appellant argues, however, that the district court's subsequent oral pronouncement during sentencing that appellant had an absolute right to appeal his sentence nullified the earlier waiver, such that it was no longer knowing and intelligent. As support, appellant relies principally on the Ninth Circuit's decision in United States v. Buchanan, 59 F.3d 914 (9th Cir. 1995), cert. denied, 116 S. Ct. 430 (1996). In Buchanan, the defendant entered into a plea agreement in which he waived his right to appeal his sentence. See id. at 916. He subsequently confirmed that he understood both the plea agreement and its consequences during the Rule 11 hearing. See id. When the defendant later appeared for sentencing, however, he orally moved to withdraw his guilty plea, stating that he had not been adequately informed of unfavorable stipulations in the plea agreement. See id. Specifically, the defendant argued that he did not understand at the time that he entered the plea that he could not argue for a downward departure at sentencing. See id. During the discussions on this issue, the district court told the defendant that he "could appeal the sentencing findings." Id. Although the defendant was given the opportunity to file a motion to withdraw his plea, the parties instead agreed to modify the agreement to permit both parties to argue for a departure from the sentencing guidelines. See id. When the defendant reappeared for sentencing, the district court informed the defendant that under Rule 32 of the Federal Rules of Criminal Procedure, he had the right to appeal findings made by the district court regarding sentencing and that to do so, the defendant had to file notice of appeal within ten days of the hearing. See id. at 917. The government did not object to the district court's statement, and the defendant responded when questioned by the district court that he understood his right to appeal. See id.

Although the Ninth Circuit recognized that the defendant entered into the plea agreement knowingly and intelligently, the court found that because of the district court's subsequent statements that the defendant would be able to appeal his sentence, the defendant could have had a reasonable expectation that he could appeal his sentence. See id. The court also found that the defendant's statement to the dis-

5

trict court that he understood his right to appeal indicated that he believed that he had a right to appeal and that he misunderstood the substance of his plea agreement. See id. at 917-18. Finally, the court found that the government's failure to object to the district court's statement gave the defendant "no reason but to believe that the court's advice on the right to appeal was correct." Id. at 918. The court concluded that "[g]iven the district court judge's clear statements at sentencing, the defendant's assertion of understanding, and the prosecution's failure to object, . . . the district court's oral pronouncement control[led] and the plea agreement waiver [was] not enforceable." Id. Although deciding a different but related issue, the Sixth Circuit has quoted Buchanan with approval. See Everard v. United States, 102 F.3d 763, 766 (6th Cir. 1996), cert. denied, 117 S. Ct. 1011 (1997).

We are not persuaded by the holding in Buchanan that a waiver of a right to appeal contained in a plea agreement that has been entered into knowingly and intelligently may be held unenforceable because of subsequent erroneous and apparently inadvertent statements by the district court to the effect that the defendant has a right to appeal. Once a defendant has knowingly and intelligently waived his right to appeal and that waiver is confirmed during a Rule 11 hearing, the requirements for an effective waiver of appeal have been satisfied, and the waiver should be enforced. See Attar, 38 F.3d at 731; Marin, 961 F.2d at 496. To hold otherwise ignores the purpose and implication of a Rule 11 hearing, which is to establish, on the record, the knowing and intelligent nature of each guilty plea. See United States v. Taylor, 984 F.2d 618, 621 (4th Cir. 1993). Therefore, we disagree with the Ninth Circuit and hold that once an appeal waiver is established to be knowing and intelligent pursuant to Rule 11, the waiver may not be held unenforceable because of a district court's erroneous statements at a subsequent proceeding that the defendant has a right to appeal. In this case, since there is no evidence that appellant's appeal waiver was less than knowing and intelligent and since the voluntariness of appellant's guilty plea was confirmed during a Rule 11 hearing, the appeal waiver should be enforced notwithstanding the district court's subsequent inadvertent statement that appellant had a right to appeal his sentence.

In addition to arguing that the district court's statement nullified his earlier appeal waiver, appellant asserts that even if his waiver of

6

appeal was valid, the sentence imposed by the district court is illegal and a general appeal waiver does not bar an appeal of an illegal sentence. Specifically, appellant asserts that his sentence is illegal because it violates the sentencing guidelines and because the district court lacked jurisdiction to sentence appellant as a juvenile under 18 U.S.C. § 5032. Neither of these arguments has merit.

As set forth above, an appeal waiver does not preclude a defendant from arguing on appeal that his sentence is above the maximum penalty authorized by statute or was based on a constitutionally impermissible factor, such as race. See Marin, 961 F.2d at 496. However, an appeal waiver does preclude an argument that the district court improperly applied the sentencing guidelines or violated a procedural rule when imposing sentence. See Attar, 38 F.3d at 732. In this case, the sentence imposed by the district court was well within the five-year maximum sentence authorized under § 1163, and there is no allegation that appellant's sentence was constitutionally impermissible. Instead, appellant's asserted grounds for appeal fall within the range of issues that may not be appealed once the defendant has entered a knowing and intelligent waiver of appeal.*

_____

*Section 5032 provides that a district court may not sentence a juvenile until it has received the juvenile's prior court records or a certification that such records do not exist or are unavailable. See 18 U.S.C. § 5032. Although courts have vacated adjudications of delinquency on direct appeal where there was no effort to deliver juveniles' prior court records to the district court, see, e.g., United States v. Doe, 13 F.3d 302, 304-05 (9th Cir. 1993); United States v. M.I.M., 932 F.2d 1016, 1020 (1st Cir. 1991), courts have also recognized that the record certification provision of § 5032 should be read to afford the government a limited amount of flexibility, see United States v. Wong, 40 F.3d 1347, 1369 (2d Cir. 1994); United States v. Parker, 956 F.2d 169, 171 (8th Cir. 1992). In this case, although the district court never actually received appellant's juvenile court records, those records were summarized in appellant's presentence report, and appellant does not assert that this summary was inaccurate. This error is, then, at most, a procedural error, and an appeal based on this error is precluded where the defendant has waived his right to appeal. See Attar, 38 F.3d at 732 (a defendant who signs a general waiver of the right to appeal his sentence waives the right to appellate review of his sentence on the ground that it results from a violation of a procedural rule). Thus, while appellant may have been able

7

III.

For the foregoing reasons, we hold that appellant knowingly and intelligently waived his right to appeal his sentence. This appeal is, therefore, dismissed.

DISMISSED

MURNAGHAN, Circuit Judge, dissenting:

I dissent. The majority decision represents a perversion of the criminal justice system that I cannot endorse. In its decision today, the majority holds that a waiver-of-appeal rights provision is enforceable despite the fact that the district court in direct contravention of the plea agreement including the waiver-of-appeal rights provision informs the defendant that he has an absolute right to appeal and the Government sits silently observing the entire proceeding without ever raising an objection to the district court's obvious mistake.

I.

Undoubtedly, in the Fourth Circuit, a waiver-of-appeal rights provision in a valid plea agreement is enforceable against the defendant so long as it is "the result of a knowing and intelligent decision to forego the right to appeal." United States v. Broughton-Jones, 71 F.3d 1143, 1146 (4th Cir. 1995) (quoting United States v. Attar, 38 F.3d 727, 731-33 (4th Cir. 1994)). In the instant case, paragraph 12 of the plea agreement provided:

> The defendant waives the right to contest either the conviction or the sentence in any direct appeal or other post-conviction proceeding, including any proceeding under 28

_____

to successfully attack his sentence based on a violation of § 5032 in the absence of an appeal waiver, in this case, he did waive his right to appeal his sentence, and a failure to comply strictly with § 5032's procedural requirement is not the sort of error cognizable on appeal in the face of a general appeal waiver.

8

U.S.C. § 2255. This waiver shall not apply to claims of inef-
fective assistance of counsel or prosecutorial misconduct.

Despite the above paragraph, at sentencing the district court twice
informed One Juvenile Male (1MJ) that he had the right to appeal.
The following exchange occurred between the district court and 1MJ
at the close of the sentencing:

> COURT: [1MJ] you have an <u>absolute right to appeal</u> that
> sentence. Now, you should talk to your attorney and he will
> give you his opinion about what the chances you have con-
> cerning this sentence. But, you do not have to take his
> advice. You have an <u>absolute right to appeal</u>, if you choose
> to do so. Do you understand that right?
>
> 1MJ: Yes, Your Honor.

The district court continued:

> COURT: And if you cannot afford <u>to appeal</u>. If you decide
> . . . <u>to appeal</u> and can't afford to, the cost of <u>an appeal</u>. You
> may fill out an indigency affidavit and it will prove and you
> <u>may appeal</u> at government expense.
>
> 1MJ: Yes, Your Honor.

(Emphasis added). At no time did the Government object to the dis-
trict court's oral pronouncements about 1MJ's ability to appeal, and
the procedural mechanisms for perfecting that appeal, despite the fact
that those pronouncements were in contravention of the plea agree-
ment.

Although an issue of first impression for the Fourth Circuit, as the
majority recognizes the Ninth Circuit has addressed the precise issue.
In <u>United States v. Buchanan</u>, 59 F.3d 914 (9th Cir. 1995), <u>cert.
denied</u>, 116 S.Ct. 430 (1996), despite a waiver of the appeal rights
contained in his plea agreement, the defendant appealed his sentence
arguing that the district court had erred in calculating his criminal his-
tory score. <u>Id</u>. at 915. The government filed a motion to dismiss the
appeal. <u>Id</u>.

9

The court focused on the district court's oral pronouncements at the defendant's sentencing hearings in which the district court stated, despite the plea agreement, that the defendant had a right to appeal his sentence. In light of the district court's statements, the court stated that the defendant "could have had a reasonable expectation that he could appeal his sentence." Id. at 917. Reasoning that a district court's pronouncements should control, the court held that:

> Litigants need to be able to trust the oral pronouncements of district court judges. Given the district court's clear statements at sentencing, the defendant's assertion of understanding, and the prosecution's failure to object, we hold that in these circumstances, the district court's oral pronouncements controls and the plea agreement waiver is not enforceable.

Id. at 917.

I find the reasoning of Buchanan is persuasive, and the instant case fits well within the rule announced in that case. See also Everard v. United States, 102 F.3d 763, 766 (6th Cir. 1996) (addressing the situation when the district court's oral pronouncements are at odds with the defendant's plea agreement, the court stated"[i]t is quite conceivable in this situation that the defendant would not know whether his waiver of the appeal in the plea agreement or the judge's statements regarding his right to appeal controlled."). The majority casts aside Buchanan reasoning that "[t]o hold otherwise ignores the purpose and implication of a Rule 11 hearing, which is to establish, on the record, the knowing and intelligent nature of a guilty plea." Majority Opinion ("Maj. Op.") at 6. In my view, the majority's holding today ignores the purpose of our federal judiciary, which is to ensure that a criminal defendant is sentenced in a just manner. Undoubtedly, federal judges occasionally make mistakes and this case demonstrates such human foibles. Nevertheless, this case is not about one district court judge's inadvertence during the sentencing of 1MJ, rather, this case is about whether the brunt of a district court's mistakes, coupled with the complicity of the prosecution who never alerted the district court to its error, should be borne by a criminal defendant. In effect, considering the circumstances in which the district judge's remarks were made

10

and the government's complete failure to refute them, there was an amendment of the plea agreement.

I agree with the Buchanan court's sentiment that "[l]itigants need to be able to trust the oral pronouncements of district court judges." Buchanan, 59 F.3d at 917. Here, two important constituent parts of our criminal justice system, the federal district court and the Assistant United States Attorney (AUSA), failed 1MJ. A judge engaged in sentencing a defendant should be correct or if incorrect and the prosecution takes no steps to correct the judge, effectively a new agreement, contract, or understanding comes into existence replacing the earlier plea agreement's waiver-of-appeal rights provision. It strikes me as patently odd that on one hand the defendant can be told by a federal district court judge that he has an absolute right to appeal, and then a federal court of appeals dismisses his appeal on the grounds that he had no right to appeal.

II.

I note one other disagreement with the majority. Even if the waiver-of-appeal rights provisions was applicable to this appeal, 1MJ may always challenge the jurisdiction of the district court to sentence him regardless of the waiver. 1MJ argues that the district court did not have jurisdiction to sentence him because his juvenile records were never presented to the district court and no explanation for this absence of certification existed in violation of 18 U.S.C. § 5032. The government argues that it complied with § 5032 because 1MJ's reference to his juvenile records was contained in the presentence report, which was available to the court prior to sentencing 1MJ.

18 U.S.C. § 5032 provides, in relevant part:

> A juvenile shall not be transferred to adult prosecution nor shall a hearing be held under section 5037 (disposition after a finding of juvenile delinquency) until any prior juvenile court records of such juvenile have been received by the court, or the clerk of the juvenile court has certified in writing that the juvenile has no prior record, or the juvenile's record is unavailable and why it is unavailable.

11

18 U.S.C. § 5032 (1985 and Supp. 1997) (emphasis added).**1** Pursuant to 18 U.S.C. § 5037, a disposition hearing includes a sentencing. <u>See</u> § 5037 ("If the court finds a juvenile to be a juvenile delinquent, the court shall hold a disposition hearing concerning the appropriate disposition no later than twenty court days after the juvenile delinquency hearing . . .").

In the instant case, a summary of 1MJ's juvenile records, but not a verbatim copy, was included within the PSR. As the majority acknowledges, to date, the district court has never received 1MJ's actual juvenile records. Instead of establishing the validity of the government's employed practice of "complying" with § 5032's requirement through the use of summaries, the majority, confining itself to a footnote, terms the government's failure to comply with § 5032 as "at most, a procedural error," and hence, concludes that such an error would be included with those errors unappealable due to waiver-of-appeal rights provision. Thus, the majority fails to pass upon the validity of the government's procedure, merely citing with approval <u>Wong v. United States</u>, 40 F.3d 1347, 1369 (2d Cir. 1994), for the proposition that the records certification dictated in § 5032 should "afford the government a limited amount of flexibility." Maj. Op. at 7-8 n.*. How much flexibility? The majority does not tell.**2**

_____

**1** Prior to 1994, this same paragraph provided:

> <u>Any proceedings against a juvenile under this chapter or as an adult shall not be commenced until</u> any prior juvenile court records of such juvenile have been received by the court, or the clerk of juvenile court has certified in writing that the juvenile has no prior record, or that the juvenile's record is unavailable and why it is unavailable.

18 U.S.C. § 5032 (1985) (emphasis added).

In 1994, with the passage of the "Juvenile Prosecution Act of 1994", Congress amended 18 U.S.C. § 5032 by striking "Any proceedings against a juvenile under this chapter or as an adult shall not be commenced until" and inserting "A juvenile shall not be transferred to adult prosecution nor shall a hearing be held under section 5037 (disposition after a finding of juvenile delinquency) until".

**2** The majority's citation to <u>United States v. Wong</u>, 40 F.3d 1347 (2d Cir. 1994), and <u>United States v. Parker</u>, 956 F.2d 169 (8th Cir. 1992), are not persuasive because in <u>Wong</u> and <u>Parker</u> the government did eventually comply with the records certification through the provision of the juvenile records to the court, so the precise issue involved in the instant case is not resolved by reliance on either of those decisions.

In any event, the majority's labeling of the government's failure to comply with § 5032 as a "procedural error" is untenable. A plain reading of the statute reveals that the records certification requirement is a jurisdictional prerequisite to the district court's constitutional ability to sentence 1MJ. Every circuit to address the question has similarly so concluded, including the Wong court cited with approval by the majority. See Wong, 40 F.3d at 1363 ("Certification is a prerequisite to the exercise of federal jurisdiction over juveniles."); Doe, 13 F.3d at 304 ("Certification is a jurisdictional requirement. . . . Compliance with [§] 5032's jurisdictional prerequisites is necessary for federal court jurisdiction to exist"); United States v. Chambers, 944 F.2d 1253, 1258-60 (6th Cir. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1217 (1992); United States v. One Juvenile Male, 923 F.2d 614, 620 (8th Cir. 1991) ("no proceeding may be commenced against a juvenile under section 5032 until the juvenile records or certification of the appropriate authority are received by the district court."); United States v. M.I.M., 932 F.2d 1016, 1019 (1st Cir. 1991) (addressing government's failure to comply with § 5032 stated "[p]lainly, this juvenile case did not proceed in accordance with the statute's mandate and therefore the jurisdiction of the district court was not properly invoked."); United States v. Brian N., 900 F.2d 218, 221 (10th Cir. 1990) (same). The majority's skirting of the § 5032 issue is unwarranted. As the AUSA noted during oral argument, the U.S. Attorney's Office has been "complying" with § 5032 in this manner as matter of practice. This court, at a minimum, should determine whether this manner of "compliance" was valid or not.

As 1MJ has raised a jurisdictional challenge to the district court's ability to sentence him in the first instance, the issue is properly appealable regardless of the enforceability of the waiver-of-appeal rights provision. Hence, I disagree from the majority's conclusion that § 5032 presents a procedural error not "cognizable on appeal in the face of general waiver." Maj. Op. at 7-8 n.*. As the majority has recognized, as well as with the waiver-of-appeal rights provision contained in 1MJ's plea agreement, a defendant does not waive all his rights. A defendant may always raise an ineffective assistance of counsel claim, or that his sentence is illegal, or based on an impermissible factor, such as race. See United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). Certainly included within those rights which cannot be waived is a challenge to the court's jurisdiction in the first

13

instance to preside over the sentencing. Such a challenge would not be precluded by the waiver-of-appeal rights provision.

This case is not about whether 1MJ suffered any prejudice as a result of the government's method of attempting to provide his juvenile records. Rather, the case presents the more fundamental question of whether the district court, without receiving 1MJ's juvenile records had jurisdiction to sentence 1MJ in the first place.

It may well be that when called to pass upon the government's admitted practice of providing the juvenile's records in the form of a summary in a presentence report to the district court, this court may conclude that such a practice is actually in compliance with § 5032. Nevertheless, the court should, at a minimum, either sanction or disapprove of such a practice, as it is for the federal courts, not the government, to interpret a federal statute and to give it a meaning which may well be at odds with the statutory language.

Because I believe that the district court's oral pronouncements negated the waiver-of-appeal rights provision contained in 1MJ's plea agreement with the government, I would address 1MJ's other issues raised on appeal. In addition, even if the waiver-of-appeal rights provision is enforceable, this court should address the § 5032 argument advanced by 1MJ because a defendant may always challenge the court's jurisdiction to sentence him regardless of the presence of a waiver-of-appeal rights provision. I, therefore, dissent.

14